NS

JOSEPH VALERIO ( # 83257-053 ).
U.S.P. TUCSON, P.O.BOX NO: 24550.
TUCSON, AZ. 85734.
(In Pro Se).

========================================================================

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

========================================================================

| | |
|---|---|
| Joseph Valerio, (Appellant). | )) Appeal No : 22-6986 |
| | )) ( Civil Case No : 5:20-CV-185 ) |
| Vs. | )) PLAINTIFF'S INFORMAL BRIEF |
| United States Of America, (Appellee). | )) |

========================================================================

Comes now Plaintiff/Appellant Joseph Valerio (Valerio henceforth) in the action captioned above, and presents his informal brief for the Court's consideration in pro se.

### JURISDICTION OF THE COURT

### DISTRICT COURT'S JURISDICTION

The District Court from which this appeal is taken had jurisdiction of this action pursuant to Federal Tort Claim's Act 28 U.S.C.S. §2671 et seq, 28 U.S.C.S. §1331, and §1336(b)(1). In particular, jurisdiction under this statute was proper because any tort action commenced against an agency of United States, where United States is defendant, the United States District Court has the original jurisdiction.

### COURT OF APPEALS JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C.S. §1291. In particular, jurisdiction under this statute is proper because, this appeal is taken from a final judgment rendered and entered in the United States District for the Northern District of West Virginia.

### TIMELINESS OF THE APPEAL

This appeal is timely under the provisions of the Rule 4(a)(1)(B) of the Federal Rules of Appallete Procedure because the final judgment appealed from was entered on the date 6 /28/2022 and the Notice of Appeal was filed on the date 8 /25/2022. The judgment appealed from is "final" within the meaning of 28 U.S.C.S. §1291, because it disposes of all claims of all parties in this action.

JOSEPH VALERIO ( #
U.S.P. TUCSON, P.O.BOX NO: 24550
TUCSON, AZ. 85734.
(In Pro Se).

## TABLE OF CONTENTS

I.   Issues presented for review. .................................................. 2

II.  Statement of the case. ....................................................... 3

III. Summary of the argument ..................................................... 4

IV.  Argument and Discussion. ..................................................... 5

   A. The denial of discovery sought that was in itself more than sufficient to survive the summary judgment, but would have created genuine issue of material facts was prejudicial and an abuse of discretion. ..................................... 5

   B. In order to avoid piecemeal litigations, it is vital that the district court adjudicate all the claims in the complaint. When the Court accorded weight and sufficiency to the affidavits and declarations submitted in bad faith, and declined to rule on the dispositive motion seeking sanctions, it abused its discretion. ........ 9

   C. The decision to grant summary judgment was premature considering the incomplete record. It aggravated when plaintiff's substantive right to present disputed facts, then cross move for summary judgment were unduly denied. Constituting a violation of due process. ............................................................... 10

   D. The resolution of Claim 3, 'Failure of SIS, and the institute's correctional staff is wholly unreasonable application of law, is arbitrary and caprice, and therefore manifests abuse of discretion. .................................................. 11

   E. The resolution of Claim 5, Intentional infliction of mental distress is wholly unreasonable, arbitrary, and caprice. Therefore manifests clear abuse of discretion. ................................................................... 13

   F. Defendants are arguing and the district court agrees that statute congress enacted, regulations BOP promulgated, are non-specific, vague, arbitrary and caprice, can be applied discriminatorily, in essence unconsitutional. ....................... 15

   G. The district court erred in declining to exercise its jurisdiction by concluding that the FTCA's discretionary function exception immunizes the Government agents conduct from lawsuit. A wholly unreasonable application of law. ...................... 18

V.   Conclusion. ................................................................. 24

VI.  Excerpts of Record. ......................................................... 25

## I. ISSUES PRESENTED FOR REVIEW.

A.   THE DISTRICT COURT ERRED IN DENYING REQUEST FOR DISCOVERY. THEREBY ABDICATING ITS
     RESPONSIBILITY TO RESOLVE THE FACTS NOT ONLY ANTECEDENT, BUT INTERTWINED WITH THE
     JURISDICTION.

B.   THE DISTRICT COURT AT THE OUTSET ERRED IN EMBRACING AND ACCORDING WEIGHT AND
     SUFFICIENCY TO AFFIDAVITS PRESENTED IN BAD FAITH. AND THEN ERRED IN DECLINING TO RULE
     ON THE DISPOSITIVE MOTION.

C.   THE DISTRICT COURT VIOLATED VALERIO'S DUE PROCESS BY PREMATURELY ADJUDICATING THE
     CLAIMS, PRIOR TO THE SUMMATION OF ADEQUATE RECORD IN PLACE.

D.   THE RESOLUTION OF CLAIM 3, 'FAILURE OF SIS, AND THE STAFF AT PRISON IS WHOLLY
     UNREASONABLE AND A CLEAR ABUSE OF COURT'S DISCRETION.

E.   THE RESOLUTION OF CLAIM 5, 'INTENTIONAL INFLICTION OF MENTAL DISTRESS' IS WHOLLY
     UNREASONABLE AND A CLEAR ABUSE OF COURT'S DISCRETION.

F.   IN ARGUING STATUTE AND REGULATION ARE NON-SPECIFIC, DEFENDANTS AND COURT'S ARE
     ARGUING THAT THE STATUTE AND REGULATIONS ARE UNCONSTITUTIONAL. EITHER FACIALLY OR AS
     APPLIED.

G.   THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE ITS JURISDICTION BY CONCLUDING THAT
     THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION IMMUNIZES THE GOVERNMENT AGENTS CONDUCT
     FROM THE LAWSUIT.

## II. STATEMENT OF THE CASE

This is a prisoner initiated Personal Injury, assault, and battery action brought under Federal Tort Claims Act, in which Plaintiff also asserted intentional infliction of emotional injury. (See Doc-50). The statement of facts set out in the Court's ORDER granting summary judgment to defendants United States partially summarizes the facts as set out by the defendants United States. However, the Court wholly omits to mention the disputed facts, which are attached in Exhibit - A, that was submitted to the Court during the Rule 59(e) procedure. The District Court decided in defendants favor prior to Plaintiff's opportunity to furnish these facts in the Court. Furthermore, the Court declined to exercise its discretion to cure the facts in dispute.

Procedurally, Plaintiff moved the Court for ORDER granting Discovery on facts that could resolve issues intertwined with jurisdiction. (See Doc-68,69). The request was denied by the Court (Doc-71). Plaintiff moved the Court to strike and sanction under Rule 56 for producing bad faith affidavits. (Doc-75). The District Court declined to reach the merits of that motion while it fully accorded sufficient weight to them. The Court then declined to exercise its jurisdiction stating the 'Discretionary Function Exception' of the FTCA, affirmatively prevented the inquiry into the suit because, government has not waived its right to be sued. (Doc-77). The District Court was moved on a motion to reconsider under Rule 59(e) (Doc-80). It was denied on 06/28/2022. Plaintiff Joseph Valerio (Valerio henceforth) appeals from that decision.

## III. SUMMARY OF THE ARGUMENT

While the District Court not only denied ORDERING discovery to resolve the facts that entangled with the facts which were jurisdictional, it accorded adequate weight and sufficiency to the affidavits that were product of bad faith and cover-up, without disposing the motion that argued for sanctions. Before the Plaintiff could complete the filing of "statement of facts" to complete the record and subsequently cross move for summary judgment for the Court's consideration, a procedure that was rightfully due, the Court ruled in favor of defendants United States.

Where the alleged Government agents' conduct clearly fell outside the scope of their employment, and therefore non-discretionary, the District Court immunized their conduct under 'Discretionary Function Exception' of the FTCA. The broad expanse of immunity, the District Court seem to acknowledge under the FTCA's 'Discretionary Function Exception' is not the kind Congress envisioned in its legislation. The District Court's application of Discretionary Function Exception to the set of facts alleged in the case at bar, under the governing legal principle as announced by U.S. Supreme Court is wholly unreasonable.

While it did so, the adjudication of claims for 'failure to protect' and for 'emotional injury' is even more contrary under the Haines theory to liberally construe a pro se petitioners motions. To the extent, the appealed decision requires the Court of Appeals to not only evaluate the reasonableness of the lower Court's outcome, but also all aspects of the lower Court's legal and factual analysis. Plaintiff Joseph Valerio, a Federal prisoner, appearing in pro se, makes this humble attempt to present his arguments in the following discussions.

III. SUMMARY OF THE ARGUMENT

## IV. ARGUMENT AND DISCUSSION

A. THE DENIAL OF DISCOVERY SOUGHT THAT WAS IN ITSELF MORE THAN SUFFICIENT TO SURVIVE THE SUMMARY JUDGMENT, BUT WOULD HAVE CREATED GENUINE ISSUE OF MATERIAL FACTS WAS PREJUDICIAL AND AN ABUSE OF DISCRETION

When a District Court, such as here, grants summary judgment without discovery, the Appellate Court reviews such procedural decisions for 'abuse of discretion'. See Harrods Ltd. V. Sixty Internet Domain Names 302 F.3d 214, 244 (4th Cir 2022). A district Court has substantial discretion in managing discovery. And "of course, a district court by definition abuses its discretion when it makes an error of law." Rice V. Rivera 617 F.3d 802, 811 (4th Cir 2010)(citations omitted). Here, the district Court's rationale for denying Valerio his right to discovery is patently erroneous. Even more damaging to the district court summary judgement decision is rooted in the requirement of the Rule 12, that the parties first "be afforded a reasonable opportunity for discovery" Gay v. Wall 761 F.2d 175, 177 (4th Cir 1985)(citations omitted); Accord E.I. Du Pont de Numours & Co. V. Kolon Indus., Inc., 637 F.3d 435, 450 (4th Cir 2011) (relying on Gay for conclusion that, because record indicates that parties had not had "opportunity to conduct reasonable discovery," court would have erred by converting dismissal motion to one for summary judgment). Indeed Rule 12(d) itself prescribes the same discovery requirement by Fourth Circuit case law. See Fed. R. Civ. P. 12(d).

A nonmoving party "through no fault of its own, has had little or no opportunity to conduct discovery" and when "fact intensive issues" are involved, so long as the nonmovant has not been lax in pursuing discovery and has "adequately informed" the district court through motions and objections that summary judgment is premature and discovery on material facts is necessary, See Harrods 302 F.3d at 244-45, the movant has fulfulled his obligation. Moreover, allowing a party enough time for discovery before summary judgment is particularly important when the other party has exclusive control of the relevant facts, more so when the case presents questions involving 'intent' and motive' Id at 246-47. See also McCray v. Md. Dep't of Transp. 741 F.3d 480, 484 (4th Cir 2014); Willis v. Town of Marshall 426 F.3d 251, 263-64 (4th Cir 2005)(vacating grant of summary judgment on class-of-one equal protection claim because plaintiff was not allowed discovery to demonstrate that other similarly situated were not treated similarly).

It is understandable that Prison inmates are precluded by Local Rules from taking discovery without Court's permission, See. N.D.W.Va L.R. P.L. R-7. But that rule should not apply to discovery requests where information sought are "jurisdictional facts [that] are intertwined with the facts central to the merits" of a dispute. U.S. Ex. rel. Vuyyuru

V. Jadhav 555 F.3d 337, 348 (4th Cir 2009)(citations omitted). Where the defendant(s) are contesting not only the jurisdictional basis for a suit but also the core of a plaintiff's cause of action, then the plaintiff is entitled to the same "procedural safeguards" that "would apply were the plaintiff facing a direct attack on the merits." Kerns v. United States 585 F.3d 187, 193 (4th Cir 2009). Including a presumption of the truthfulness of the facts alleged, Rich v. United States 851 F.3d 140, 145 (4th Cir 2015), and the Court should resolve factual disputes only after appropriate discovery, or, if necessary at trial Id; Kerns 585 F.3d at 193. See Arbaugh v. Y & H. Corp., 546 U.S. 500, 514 (2006)("If satisfaction of an essential element of a claim for relief is at issue, ... the jury is the proper trier of contested facts."). In short, unless the relevant allegations are "wholly substantial," the district court should deny a motion for dismissal in order to "assure jurisdiction and proceed to the intertwined merits issue." Kerns 585 F.3d at 193.

Because the dispute over the cause and severity of Valerio's injuries are inextricably intertwined with the merits of the Tort Action, he was entitled to a "presumption of truthfulness" on a motion to dismiss. Rich 851 F.3d at 145; and " the entire factual dispute [should have been] appropriately resolved only by a proceeding on the merits." Vayyuru 555 F.3d at 348 (citations omitted). As the Fourth Circuit has previously observed in the FTCA contexts time and again, the procedural safeguards afforded by a merits proceedings "do[] not dissappear simply because the plaintiff is a prisoner." Rich 811 F.3d at 147. Given the

Valerio has alleged in his First Amended Complaint (FAC), historically it is impossible for any inmate with convictions such as his in either instant or in background offense, to be assigned and house in facilities such as United States Penitentiary (USP) Hazelton. Even if negligently such an assignment is made, it would nonetheless result in either of the two outcomes :
  (1) The inmate will be segregated in the Secured Housing Unit (SHU) for his protection. Or,
  (2) If assigned to general population, the inmate will certainly be assaulted with deadly weapons causing serious bodily injury or death.
There is no third outcome. And both the outcomes are reasonably foreseeable and the resultant injury is almost always within the confines of 'deliberate indifference' resulting in 'cruel and unusual punishment' or 'negligence' resulting 'personal injury or death'.

The Unit Team, Special Investigative Services (SIS), Psychology Staff, the Correctional Staff, and everyone comprised of Intake Screening at USP Hazelton very well knew that Valerio's assault was inevitable. These are not average staff, but individuals with deacades of experience and training under their belt. They know every nuance of Prisonology and nothing is actully hidden from them. Despite those qualifications, they

knowingly failed to warn Valerio of impending assault, and in deliberate indifference assigned him to general population, where he was inevitably assaulted with deadly weapons causing serious bodily injuries. He himself became a numeral for prison assault statistics.

The district Court relied on decision in <u>Rich</u>. See Doc-77 at 15-16. But <u>Rich</u> is only instructive. It does not meet the threshold of conduct alleged herein. Here the facts alleges that the correction officers at Hazelton knowing and deliberately exposed Valerio to assault by leaking the nature of his conviction to orchestrate an assault, and then engaged in cover-up to protect the perpetrators of the crime. The District Court repeatedly relied on, only the facts that it calls 'discretionary' to refrain from exercising the jurisdiction. Remaining facts did not make the cut.

Even under Rule <u>56(d)</u>, a litigant opposing summary judgment may request time for discovery -- or deferral of denial of summary judgment altogether - when he "cannot present facts essential to justify [his] opposition." See Fed. R. Civ. P. 56(d). Valerio in case at bar did that. See Doc-68. As the Court of Appeals has explained, relief under Rule 56(d) is "broadly favored and should be liberally granted in order to protect nonmoving party from premature summary judgment motions" <u>McCray</u> 741 F.3d at 484. Consistent with the general rule that summary judgment should only be granted " after the adequate time for discovery." <u>Celotex Corp V. Catrett</u> 417 U.S. 317, 322 (1986). The case at bar, the subjective knowledge of the Government actors are "exclusively in the control of the opposing party." <u>Harrods</u> c302 F.3d at 246-47 (citations omitted); This knowledge is also dispositive to the case especially because Congress must be put on notice of the atrocities and abuse that comes with such delegation of abundant power that has no oversight. Whatsoever. See also <u>Id</u> ("Summary judgment prior to discovery can be particularly inappropriate when a case involves complex factual question about intent and motive").

This 'negligence' (gross or not), 'indifference' (deliberate or not), and 'malice' are indeed matters resolved in discovery. More significantly among these facts was the inquiry that was vital, as to why at all Valerio was brutally assaulted. He was barely there in the facility and within 24 hours, was assaulted to near death. Resolving every aspect of the challenged conduct that resulted in the brutal assault would eventually resolve which actions were judgment, choice, negligent, deliberate, and or infected with aforethought malice. Resolution of these facts are prerequisite to whether the challenged conduct is shielded by some form of defense. Pubic and the Congress must be alerted of how BOP is misuing its authority and the continued lack of adequate legislation that will result in violent crimes and continually render the prisons inherently dangerous. While the Courts have been quick to embrace and quote that Congress has not given them teeth to adjudicate

claims, the lack of factual resolution continues to shield general public and the Congress from these abuses. The general public and Congress must understand that this is not the reality tv show "60 days In". This is real life where lives are lost and crimes are committed. These facts are intricately woven with the putative liablity claims alleged in the FAC.

The record is devoid of these facts and stands incomplete for an adequate appellate reivew. Because the District Court did not consider these and the disputed facts, and it failed to resolve the issues discussed above, it did not have an opportunity to weigh the complete record at summary judgment. Rather the District Courts denial faults Valerio for being helpless prisoner plaintiff, failing to have already gathered necessary evidence, while simultaneously it alludes to an exception that allows commission of abuse, holding that Congress allows abuses and constitutional violations. Given the shortcomings of the record and failure to provide Valerio with an opportunity for discovery, he respectfully submits that the District Court abused its discretion in granting summary judgment in this posture.

B. IN ORDER TO AVOID PIECEMEAL LITIGATIONS, IT IS VITAL THAT THE DISTRICT COURT ADJUDICATE ALL THE CLAIMS IN THE COMPLAINT. WHEN THE COURT ACCORDED WEIGHT AND SUFFICIENCY TO THE AFFIDAVITS AND DECLARATIONS SUBMITTED IN BAD FAITH AND DECLINED TO RULE ON THE DISPOSITIVE MOTION SEEKING SANCTIONS, IT ABUSED ITS DISCRETION.

"It is general rule, of course, that a federal appellate court does not consider an issue not passed upon below," especially if doing so, "would require extensive analysis of issues never addressed by the district court." Singleton V. Wulff 428 U.S. 106, 120 (1976). The Supreme Court explained that this is "this is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issue ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Id at 120. This Court has no idea what evidence if any, Valerio would, or could have developed through hearings and offered in defense. That is only because Valerio had been denied opportunity to proffer such evidence.

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the Court of Appeals, to be exercised on the facts of individual cases ." Id at 121. Whenever a District Court resolves any claims or counterclaims on the merits the trial judge should give his or her reasons, either orally on the record or by written statement, so that the record is clear for appellate review. In this case, the trial court did not rule on the Rule 56(h) motion despite repeated request on Rule 59(e) motion. When the trial court did not address the issue, the common approach is to decline the review and remand for the lower court to conduct the full analysis in the first instance. And given the fact specific nature of the claim, this Appellate Court should appropriately decline to assess the issue in the first instance.

This is not a case where a plaintiff merely disagrees with defendants affidavits. The subterfuge in these affidavits cannot be overstated. (See EOR at í. - ĩ̃µ). The attempts to coverup the offense conduct of the investigation is the key aspect of Valerio's claim. The District Court relied primarily on these affidavits to conclude that Valerio's case was patently frivolous. The reliance on these affidavits, filed for the purpose of summary judgment, a post hoc reasoning, essentially an artifice created to evade inquiry into the reasons for assaulting Valerio, does not entitle the defendants a summary judgment. Where the District Court's disposition of summary judgment motion depended upon the alleged perjurous or bad faith affidavits, "genuine issue of material facts" became live. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby 477 U.S. 242, 248 (1986). The analysis in question is fact driven and is inherent to claims alleged in the complaint. Therefore, it is difficult for the Appellate court to draw bright lines that will clearly cabin the review. The appropriate course of action is to decline and remand to the lower court, Valerio submits.

C. THE DECISION TO GRANT SUMMARY JUDGMENT WAS PREMATURE CONSIDERING THE INCOMPLETE RECORD.
   IT AGGRAVATED WHEN PLAINTIFF'S SUBSTANTIVE RIGHT TO PRESENT DISPUTED FACTS, THEN CROSS
   MOVE FOR SUMMARY JUDGMENT WERE UNDULY DENIED. CONSTITUTING A VOILATION OF DUE PROCESS.

Due process "is flexible and calls for such procedural protections as the particular situation demands" Mathews V. Eldridge 424 U.S. 319, 334 (1976). The nature of the process required "is shaped by the risk of errors inherent in the truthfinding process as applied to the generalities of cases not the rare exceptions." Califano v. Yamasaki 442 U.S. 682, 696 (1985) (citations omitted). "The essential requirement of due process ... are notice and an opportunity to respond." Cleveland Bd. of Educ. V. Laudermill 470 U.S. 532 546 (1985) (emphasis added). The U.S. Supreme Court has explained that "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Laudermill 470 U.S. at 545.

The District Court procedurally erred by overlooking the verified complaints and graned the summary judgment without providing an opportunity to be heard and prior to supplanting the record with disputed facts. Thereby, making summary judgment inappropriate as a substantive matter. Valerio does not dispute that he received the notice, indeed, he prepared a response supported by a memorandum and a sworn affidavit. He made explicit request to the Court attesting his desire to complete the record and place supplemental records before the Court can begin its assessment. See Doc-76 at 1 and 7. See also EOR at V - VIII . That required the District Court to set a date for him to be heard. The District Court's failure to a cutoff reply date effectively denied Valerio an opportunity to respond before the Court's ruling. This in actuality, cut off Valerio's opportunity to develop a record on which the Court could fairly rule on the merits of the complaints and the disputed facts. Thus it constituted and frustrated his due process.

Furthermore, the Court did not rectify its initial procedural error either when Valerio moved the Court on Rule 59(e). Therefore the error aggravated and cannot continue to remain harmless. Valerio's request to opposing counsel to stipulate those facts as disputed also failed. The opposing counsel denied the effort in proposing the joint record. That in itself is a "genuine issue of material facts". The question then becomes whether in searching review of the record assures this Court that the substance of the facts and disputes were sufficiently traversed by the District Court. Unfortunately it does not, Valerio submits. The evidence is in the record itself, where the District Court's decision completely relied and in verbatum reflects Government's side of the facts and completely ignores disputed facts alleged by Valerio. And that failure to accord him the opportunity is violation of his constitutional rights. Therefore, Valerio submits, it is prudent to vacate the summary judgment and remand to the District Court to conduct the analysis in the first instance.

C. THE DECISION TO GRANT SUMMARY JUDGMENT WAS PREMATURE CONSIDERING THE RECORD WAS INCOMPLETE. PLAINTIFF'S SUBSTANTIVE RIGHTS TO CROSS MOVE FOR PRESENT DISPUTED FACTS AND

### D. THE RESOLUTION OF CLAIM 3, 'FAILURE OF SIS, AND THE INSTITUTE'S CORRECTIONAL STAFF IS WHOLLY UNREASONABLE APPLICATION OF LAW, IS ARBITRARY AND CAPRICE, AND THEREFORE MANIFESTS ABUSE OF DISCRETION.

The United States can be found negligent in its obligation to protect prisoners if it reasonably knew or should have known about a potential conflict between inmates. See Saunders V. United States, No. 5:14-CV-48, 2015 WL 997907, at *11 (N.D. W. Va. Mar. 6, 2015). This reasoning is offered by the defendant, United States in their brief. See Doc-62-1 at 14-15. Eliminating the Facts in Claim-one and Claim-two, the remaining facts supporting the claim-five are listed for this Court's review. See. EOR 1X ... .

A thorough discussion of Rule 56 by the United States Supreme Court can be found in the trilogy of cases that were decided in 1986. See Matsushita Electric Industrial Co. V. Zenith Radio Corp. 475 U.S. 574 (1986); Celotex Corp. V. Catrett 477 U.S. 317 (1986); and Anderson5 v Liberty Lobby, Inc. 477 U.S. 242 (1986). Celotex addressed the initial burdens of the parties under Rule 56, Anderson addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material facts and that a judgment as a matter of law should be granted in the moving party's favor. Celotex at 324 (Quoting Rule 56). A material question of fact is question which will be outcome determinate of an issue in the case. The Supreme court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. Anderson at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings," and "designate 'specific facts showing that there is a genuine [material] isse for trial '". Id. During its analysis the Court must construe the facts and draw all reasonable inference in the light most favorable to the non-moving party. Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. Anderson at 252-255.

In Hayden V. La-z-boy Chair Co. 838 F. Supp 384 (7th Cir N.D. Ind. 1992), Judge Lee very correctly emphasized that in order to determine the existence of a genuine issue of material fact one must identify substantive law.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Id 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment [or necessitate one], even when they are in dispuite. Id. The issue of fact must be genuine, Fed. R. Civ. P. 56(c), (e).

- 11 -

During a move of show by defendants for Summary Judgment under Rule 12(b)(1), the District Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party" Pa. Nat'l Mut. Corp. Ins. Co. V. Beach Mart, Inc., 932 F.3d 258, 274 (4th Cir 2019) (emphasis added, citations omitted). To survive a motion for judgment on the pleading, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". Pledger V. Lynch 5 F.4th 511, 520 (4th Cir 2021)(citations omitted). "A claim has facial plausibility" when it shows "more than a sheer possibility that a defendant has acted unlawfully." Iqbal 556 U.S. at 678 (Citing Bell Atlantic Corp. V. Twombly 550 U.S. 544, 556 (2007)). To be plausible, the complaint "need only give the defendant fair notice of what the claim is and the grounds on which it rests". Hall V. DIRECTV, LLC 846 F.3d 757, 765 (4th Cir 2017)(citations omitted). There is no need to expound legal theories at all. The move is to assess if Plaintiff has alleged sufficient facts that could establish a claim.

Neither this Court nor the lower Court should see any reason, whatsoever, why the facts alleged in the order as exhibited in EOR at **IX** may not form or establish a valid claim against defendants. Whether Valerio can prove those set of facts and causations is ofcourse, question for another day. Numerous Courts have routinely held that a complaint need not assert "detailed factual allegations" to survive a Rule 12(b) motion, it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of cause of action". Twombly at 555 (citations omitted); Accord Ashcroft V. Iqbal 556 U.S. 662, 678 (2009). The core test before the Court is only to assess whether the well-pleaded facts state a claim that is "plausible on its face". Twombly at 570. "A Claim is 'plausible' when the plaintiff pleads facts sufficient to allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Twombly at 556. As long as the pleaded allegations of a complaint delineate a plausible claim of relief, a Court "must deny a Rule 12(b)[] motion to dismiss" Id.

In total, the critical and the operative test is whether the facts alleged in the complaint, either as single transaction, or occurances, or a series of interrelated transactions or occurances form a claim. Appellant Valerio submits that they do as exhibited in the EOR at **IX**. And the District Court failed to construe the complaint liberally. Even though it was fully capable of determining the crux of the issue, free from the fog of discretionary function exception defendants knowingly created, it failed to do so. Therefore it committed legal error of law and fact. Therefore, the judgment must be reversed and remanded to the lower court.

E. THE RESOLUTION OF CLAIM 5, INTENTIONAL INFLICTION OF MENTAL DISTRESS IS WHOLLY UNREASONABLE, ARBITRARY, AND CAPRICE. THEREFORE MANIFEST CLEAR ABUSE OF DISCRETION

Under W. Virginia Law, to establish the tort of outrage, more commonly known as Intentional Infiction of Emotional Distress (IIED), a plaintiff must establish four elements. (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct, (3) that the action of defendant's caused the plaintiff to suffer emotional distress and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. See loudin v. Nat'l Lab & Fire Ins., 228 W.Va. 34, 716 S.E.2d 696, 705 (W.Va. 2011).

> At the outset, this Court should be mindful to Valerio's pro se status in drafting the complaint and through the proceedings until the instant appeal. After all, "the long standing practice is to construe pro se pleadings liberally" given that a "pro se prisoner" - in contrast to a "seasoned ... practitioner" - is generally less able to anticipate "issues that may result in the dismissal of his complaint." Hill V. Braxton 277 F.3d 701, 707 (2002). Consequently, Courts have consistently noted that "a complaint, especially a pro se complaint, should not be dismissed summarily unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" Gordon v. Leeks 574 F.2d 1147, 1151 (4th Cir 1978) (quoting Haines v. Kerner 404 U.S. 519, 520-21 (1972) (per curium)).

Valerio is a pro se petitioner. The district Court had full authority to liberally and reasonably construe his pro se complaint and prune the facts related to : classification, placement, and cell assignment, which according to Court falls under discretionary function and alleges that Valerio is engaging in "skirting the bar". After reasonable pruning and extricating the remaining facts, it could have found a viable claim under the IIED. It did not do so.

In arguing against subject matter jurisdiction, under FTCA §1346(b)(2), the government has put at issue the truth of Valerio's allegation that significant injuries, as well as, the emotional distress connected to those injuries resulted in substantial part. Those factual allegation bear not only jurisdiction under §1346(b)(2) but also on the "essential elements" of Valerio's underlying tort action. See Arbaugh v. Y & H. Corp 546 U.S. 500, 514 (2006).

Because the dispute over the cause and severity of Plaintiff's injuries is inextricably intertwined within the merits of Valerio's Tort action. he is entitled to a "presumption of truthfulness" on a motion to dismiss. <u>Rich</u> 811 F.3d at 145. (internal citations omitted). As this Circuit has previously observed in the FTCA context, the procedural safeguards afforded by a merits proceeding "do[] not disappear simply because the plaintiff is a prisoner." <u>Rich</u> 811 F.3d at 147. Given this overlap between facts, bearing on jurisdiction as well as those central to the merits, the proper course for the District Court was to "assume jurisdiction" in order to take up the merits of Valerio's claims for emotional distress. See Kerns 585 F.3d at 195. It's failure to do so is erroneous in another aspect as well.

The claim five (5) expressly incorporates Para. ¶1-¶9 as though fully setforth within it. That is because Valerio has consistently argued that his classification, placement, and housing decisions were non-discretionary, but motivated by element of '<u>malice</u>'. He will expound on that argument further in this initial brief as well. In this appeal he presents the following inquiry :

(a) If the facts in Para. ¶5-¶9 are eliminated.

(b) And if facts in para. ¶19-¶22, ¶24, ¶26-34, ¶49-54 were alleged in order.

(c) Finally, If the facts related to physical injuries as alleged in para. ¶35-¶48 were substantiated,

will the remaining facts from para. ¶46-¶54 form a valid construction of an IIED claim ?. Valerio submits, neither this Court, nor the District Court should see no reason why the plead facts as demonstrated for reference in the exhibit, See EOR at Ⅹ - ⅩⅠ would <u>not</u> establish that Valerio suffered severe <u>Emotional</u> <u>Distress</u> caused by defendant's action or inaction. Valerio need not assert "detailed factual allegations" to survive a Rule 12(b) motion or expound on legal theories.

Just because a claim contains extraneous facts that may be irrelevant, redundant, immaterial, impertinent, or even discretionary (which Valerio does not concede they are), does not make the entire claim invalid for dismissal. The District Court has full authority and is fully capable of striking those facts from the complaint, <u>sua</u> <u>sponte</u> under Rule 12(f) and liberally construe the pleading. After all the <u>Haines</u> Court specifically advices the Courts to engage in such construction. But the Court did not. In failing to do so, not only the Court made errors of facts and law, it continued to deny rectifying those errors when it was moved under <u>Rule</u> <u>59(e)</u>. Thereby, abusing its discretion. The bottom line is, neither this Court, nor the District Court "can[] say that <u>no</u> set of facts consistent with [Valerio's] complaint would entitle him to relief, and [a District Court as well as this Court] must be able to say that before dismissing [his] claims". See <u>Palay</u> <u>V.</u> <u>United</u> <u>States</u> 349 F.3d 418, 432 (7th Cir 2003). And therefore, the judgment must be reversed and remanded to lower Court.

- 14 -

E. DEFENDANTS ARE ARGUING AND THE DISTRICT COURT AGREES THAT STATUTE CONGRESS ENACTED. REGULATIONS BOP PROMUGLATED. ARE NON-SPECIFIC, VAGUE, ARBITRARY AND CAPRICE. CAN BE APPLIED DISCRIMINATORILY, IN ESSENCE UNCONSTITUTIONAL.

After the jury found him guilty, the Court sentenced Valerio to be incarcerated in the custody of BOP. As per Congressional legislation, BOP was required to (a) "provide suitable quarters and provide for the safekeeping, care, and subsistence" and (b) "provide for the protection instruction, and discipline" to Valerio, as he was "...convicted of offenses against the United States." See 18 U.S.C.S. §4042. There is no argument amongst the parties and it has been uniformly held as U.S. Supreme Court stated, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners" See Farmer v. Brennan 511 U.S. 825, 833 (1994) (Internal Citations Omitted). The Supreme Court dicta clearly upheld, "being violently assaulted in prison is simply not 'part of penalty that criminal offenders pay for their offenses against society' " Id (internal Citations Omitted).

If as the defendants argue "Under 18 U.S.C.S. §4042's broad directives", the BOP retains discretion regarding the implementation of those mandates" Rich v. United States 811 F.3d 140, 145 (4th Cir 2015) and the Courts concede that, "the statute does not mandate or prescribe specific conduct, the BOP's decision on where and how to house plaintiff is a discretionary function", whether or not the BOP, as an agency abuses its discretion, That begins to set a dangerous precedent. See also Calderon v. United States 123 F.3d 947, 950 (7th Cir 1997) (stating that [w]hile it is true that [18 U.S.C.S. §4042] sets forth a mandatory duty of care, it does not ... direct the manner by which the BOP must fulfill its duty"). which is quite frequently quoted verbatum. What the defendant's United States themselves are arguing and the Courts are routinely conceding to it, is that the statute 18 U.S.C.S. §4042 is not specific but vague, leaving its implementation to arbitrary and caprice, and in discriminatory manner i.e. it is unconstitutional as applied.

A Statute is vague where it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement". Brown v. Town of Cory 706 F.3d 294, 305-306 (4th Cir 2013). In Order to survive a challenge, a statute must be definite. "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute". See United States v. Harriss 347 U.S. 612, 453 (1954). Similarly in Lanzetta v. New Jersey 306 U.S. 451, 453 (1939), the Supreme Court declared "[A] statute which either forbids or requires the doing of an act in terms so vague violates the first essential of due process of law". Nor can a statute be so overly broad as to improperly prohibit the enjoyment of constitutional rights. As held by the Supreme Court in Winters v. New York 333 U.S. 507, 509 (1948), "It is well settled that a statute so vague and indefinite, in form and as interpreted, as to permit within the scope

- 15 -

of its language the punishments of incidents fairly within protections of the guarantee [to be free from cruel and unusual punishments], on its face [is] contrary to the [Eighth Amendment]" Id at 873 (Originally in the context of free speech and Fourteenth Amendment).

Here, in the instant case, the defendants, United States itself argues and the Court tends to agree, that the §4042 and the regulations promulgated by BOP are non-specific, indefinite as they claim "do not provide specific course of conduct". This language used in the regulations, on its face without clearly delineating then, may definitely appear to raise a constitutional trier of issues. However, Valerio does not disagree with the advice that while the Courts have a duty to interpret legislation in a manner not inconsistent with the demands of the constitution, they are also to avoid holding of unconstitutional if a fair construction of the legislation will so allow. See Harriss at 618. In fact he strongly advocates this position. To the contrary, the Court is resigned to this notion and refuses to interpret the legislated statute as mandatory and offers a non-specific performance. And therefore, the issue comes deeply pregnant to this Court.

The legal maxim, "an infinite statute creates opportunity for the misuse of government power", solemnly applies to this case. And the evidence of such misuse is plentiful in each of the circuits where a cause of action involving misconduct of BOP staff is advanced in the Courts, be it FTCA (either successful passing discretionary function exception or not) and or Bivens, resulting in innumerable violent and brutal assaults and or countless deaths, each of which mostly go unpunished and the staff gets free pass in the name of discretion. This Court itself has seen a fairly large share of such indiscriminate and senseless violence and claims following it. Each of those cases where the misconduct was renamed as discretionary acts, precluded by "judicial second guessing" were under the guile that the statute §4042 does not provide a "specific course of conduct" and therefore cannot be prosecuted under FTCA or Bivens.

The real inquiry presented to this Court in light of Supreme Court's holding is that "[i]f an act of the legislature repugnant to the constitution, is void, does it, notwithstanding its invalidity, binds the Courts, and oblige them to give it effect ? Or, in other words, though it be not law, does it constitute a rule as operative as it was a law ? .... So if a law be in opposition to the constitution : If both the law and the constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; .... [Is it not] the very essence of judicial duty [to decide it?]" Marbury V. Madison 1 CRUNCH 137, 177 (1803). This inquiry and its decision is relevant even though this case does not arise under the constitutional violation, but laws of the United States, and in which express jurisdiction is given to this Court by the Constitution.

   The discretionary exceptions and all other variables are extraneous facts as long as they do not affect the substantial rights of an individual. One may always challenge an action under Administrative Procedures Act, and Federal Tort Claims Act jointly. The Court is fully authorized to hold the challenged act as arbitrary and caprice, therefore unconsitutional, and yet deny claims for money damages under the FTCA due to it being discretionary function, because the FTCA action does not permit a constitutional Tort. If a challenged action violates substantive rights of a prisoner, whether or not monetary damages can be claimed for that challenged act is secondary issue. The primary duty of the Court is to declare the challenged act as unconsitutional. In the instant case, even though the District Court was not explicitly requested to rule, if the Statute, Rules, and Regulations are constitutional or not, the end result rendered them unconstitutional based on defendants own argument. This is question of first impression, and this Court is requested to decide if the District Court's decision renders the operative Statute §4042, and the rules and regulations pursuant to that, as unjust application of law, and encourages discriminatory practices, or is overly broad, or vague, and therefore, is unconstitutional, either facially, or as applied.

## G. THE DISTRICT COURT ERRED IN DECLINING TO EXERCISE ITS JURISDICTION BY CONCLUDING THAT THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION IMMUNIZES THE GOVERNMENT AGENTS CONDUCT FROM LAWSUIT. A WHOLLY UNREASONABLE APPLICATION OF LAW

The Federal Tort Claims Act specifically authorizes suits against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," when the United States, "if a private person, would be liable." 28 U.S.C.A. §1346(b)(1). By enacting this legislation, Congress determined that "the United States should waive its historic defense of sovereign immunity and accept liability for the negligent conduct of government employees who are acting within the scope of their official duties." 14. Wright, Miller & Cooper, Federal Practice and Procedures : Jurisdiction 3d § 3658, at 529 (1998). The act also provides an exception to this waiver of immunity, only when government employees exercise a 'discretionary function.". 28 U.S.C.A. §2680(a). The intention of the waiver was to "prevent judicial 'second guessing of legislative and administrative decisions grounded in social, economic, and political policy". United States v. S. A. Empresa de Viacao Aerea Rio Grendense (Varig Airlines) 467 U.S. 797, 814 (1984). Even though the Statute does not define what constitutes as a 'discretionary function', the Supreme Court has established a two-step inquiry to discern if the challenged act is within the 'discretionary function exception'. See Berkovitz V. United States. 486 U.S. 531, 536 (1988). The burden of proving the applicability of the Discretionary Function Exception falls upon the United States Wright, Miller & Cooper at 639.

As the first step, the Court must determine whether the challenged conduct of a government employee "involves an element of judgment or choice" or whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id (citations omitted). Therefore the Court must interpret and analyse the policy and intent of the regulators. If a "prescribe course of action" is defined by "statutes, regulations, or policy", for the employee to follow, then the exception does not apply. If the Court determines elements of "judgment or choice" the Court moves to second step of Berkovitz inquiry, i.e., to determine, whether the challenged conduct is "of the kind that the discretionary function exception was designed to shield." Id. The exception "protects only governmental actions and decisions based on considerations of public policy." Id at 537 (citations omitted). More significantly, in order to obtain the discretionary function shield, the discretionary acts must further a public policy that the particular "regulatory regime seeks to accomplish." United States v .Gaubert 449 U.S. 315, 325, n.7 (1991).

A discretionary function exception cannot swallow the Federal Tort Claims Act in its entirety. Such a holding would be at odds with the judgment of Congress, which is reflected in the Act, that the government will generally accept responsibility for the negligence of its employees when they act within the scope of the employment. Moreover, the Supreme Court has expressly disavowed such broad interpretation. The Court has instructed that "there are obviously discretionary function acts performed by a government agent that are within the scope of his employment but not within the discretionary function exception". Gaubert 499 U.S. at 325 n.7. These are acts that "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." Id. The Court even gave an example, while on an official business, an employee drives his or her car negligently and thereby caused an accident, the discretionary function exception "would not apply" in such incidents Id. This is so because, the Court explained, even though "driving requires the constant exercise of discretion, the official's decision in exercising that discretion can hardly be said to be grounded in regulatory policy." Id. Just because, the policy does not offer guidance as to what specific traffic regulations an employee must follow, his or her traffic infraction cannot be said to have been grounded in regulatory policy.

In other words, the fact that some discretion is involved in a decision does not necessarily insulate the conduct from review. See Bultema v. United States 359 F.3d 379, 383 (6th 2004) (explaining that an "act does not necessarily amount to an exercise of a discretionary function merely because carrying out the general policy provided the opportunity for the negligent act"). "Since nearly every government action is, at least to some extent, subject to 'policy analysis'" (Gaubert 499 at 336) "the precise contours of this test are difficult to pin down." Sledge V. United States No: 12-5287, 2013 U.S.App. LE LEXIS 25940, at *6.

Further, the well developed case law also indicates lazyness or carelessness such as ones Valerio has alleged are not grounded in policy considerations. See e.g. Hartman V. Holder 00-CV-6107-ENV-JMA, 2009 U.S. Dist. LEXIS 23213, 2009 WL 792185, at *7 (E.D.N.Y. Mar, 23, 2009)("Assuming, as the Court does, that Sanders had discretion consistent with the policy objectives of BOP over the manner in which she conducts rounds, her alleged failure -- out of laziness or carelessness -- to avoid profiling herself cannot be immunized merely by evoking that general discretion"). Coulthurst v. United States 214 F.3d 106, 111 (2nd Cir 2000)("An inspectors decision (motivated simply by laziness) to take a smoke break rather than upon noticing the damaged cables, are examples of negligence fairly encompassed by the allegations of the complaint and do not involve 'consideration of public policy' ")(citations omitted).

In keeping these principles at focus, Valerio draws this Courts attentions to the facts at hand. At the outset, this Court is advised, the opposing Counsel has refused to concede that there are disputed facts that needed to be settled. That in itself is evidence of incomplete record and dispute persists in the record. The governments position is classification, placement, and housing are discretionary acts, even though their agents deliberately abuse that discretion resulting in constitutional injuries to a prisoner held in their care. Their argument rests at the pedastal, all prisoners should be entirely without remedy for any unconstitutional invasion of the rights by Federal Agents, simply because, there are no specific guidance offered in the policies and the public policy allows them to perpetrate such constitutional harms with impunity.

In Farmer v. Brennan 511 U.S. 825 (1994), the Supreme Court acknowledged, "as the lower Courts have uniformly held, and as we have assumed 'prison officials have duty ... to protect prisoners from violence at the hands of other prisoners' (citing Cortes-Quinones v. Jiminez Nettleship 848 F.3d 556, 556 (CA1), See also Pressly v. Hutto 816 F.2d 977, 979 (CA4, 1987), see also Wilson v. Seiter 501 U.S. at 303 (describing " the protections [of an inmate] is afforded against other inmates" as a "condition of confinement" subject to the strictures of the Eighth Amendment). Having incarcerated 'persons [with] demonstrated proclivi[ties] for antisocial criminal, and often violent, conduct,' Hudson v. Palmer at 526, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and the officials are not free to let the state of nature take its course. Prison Conditions may be 'restrict and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penalogical objectiv[e], Hudson V Palmer at 548, any more. that it squares with 'evolving standards of decency'" at 833. Not only the Government seems to have forgotten this holding but also that "being assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society'"(Id citing Rhodes at 347). Rather the Counsel for defendant prefer to take dig at Valerio's allegation that he deserved to be protected from such assaults due to the nature of his convictions. See Doc-62-1 at 1. Although Valerio is fully aware that this cause of action does not arise under Constitutional Violation, and even if it did FTCA does not permit such action, it is the defendants theory that they can inflict constitutional injuries and get away with it, because these conducts are " of the kind that the discretionary function exception was designed to shield." Berkovitz at 536. And the District Court agrees with this interpretation. The Court decision reflects inflicting these harms is the purpose that the regulatory regime seeks to accomplish." Gaubert at 325, n.7.

In this Circuit, the precedent reveals that in every instance it has interpreted the phrase 'public policy' it has done so broadly. Indeed, examination of the precedence shows in every instance, this Court held 'discretionary function exception' to apply, the challenged government's conduct constituted truly those acts that were rooted in 'public policy', but sure enough those that did not violate the constitution. See Minns V. United

States 155 F.3d 445 (4th Cir 1998); Bowman V. United States 820 F.2d 1393 (4th Cir 1987); Smith V. Wash. Metro. Area Transit Auth. 290 F.3d 201 (4th 2002). And Rich. In fact none of these challenged actions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ alleged a violation of Constitutional injury in fact for the Court to assess.

The evidence is abundantly available in another Precedent. The 'Intentional Tort and Law Enforcement Proviso under §2680(h) carves out parallel jurisdiction. Under the "Law enforcement proviso", the United States has waived sovereign immunity as to claims against investigative law enforcement officers arising out of the intentional torts of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. 28 U.S.C.S. §2680(h). In Medina v. United States, 259 F.3d 220 (4th Cir 2001), this Court was called upon to reconcile the difference in two provisions ( §2680 (a) and (h)). The Court appropriately concluded that, the actions underlying intentional tort allegations described in §2680(h), "may be considered discretionary function under §2680(a)" only "if authorized and implemented consistent with federal law and the constitution of United States. Id at 226. (emphasis added). Even the Fifth Circuit in Cantu v. Moody 933 F.3d 414, 423 (5th 2019) found that the law enforcement provision under the FTCA provided for an elaborate statutory scheme with the possibility of damages remedy, and therefore, served as a sufficient alternative to the plaintiff's constitutional claim. Id (citing Abbassi 137 S.Ct at 1858 and an alternative remedy "alone may limit the power of the judiciary to infer a new Bivens Cause of Action"). In doing so, the Fifth Circuit vested the constitutional injuries under §2680(h).

Even though, Valerio's complaint does not specifically allege an intentional tort in the Count three and five, and utilize the provisions available under §2680(h), the underlying facts reflect intentional acts of the prison officials. His pro se status requires the Court to construe the claims liberally, and he need not allege a specific theory of recovery. Rule 8 simply requires him to allege facts. That he did. The acts of Government agents were intentional. were ultra vires. These challenged acts do not fall within the discretionary function. Neither the Constitution, nor the regulations or the policies can offer discretion to inflict injuries of constitutional proportion. The challneged acts in case at bar is in striking contrast to the acts that this Court has upheld as discretionary in its prior precedences. Here the challenged act makes Government agents as accessory to assault and battery, and does so intentionally with aforethought malice. Then there is the cover-up to protect the perpetrators. The Government argues these acts are excusable conduct under the discretionary function exception. That argument rings hollow under the Statute that imposes a mandatory duty upon the BOP. See §4042(a).

Even if one were to agree that 'classification, housing, and placement' of inmates are decisions that are discretionary, so long as it is constitutional, it only makes the job of protecting inmates an uphill battle. BOP might sure have discretion to place any -one anywhere, so long as the inmates safety and security is taken into consideration. As soon as, the discretionary act such as 'classification, housing, and placement' is performed, it only heightens their duty to protect such an inmate if circumstances dictates so. Certainly, in no terms, it reduces the burden to protect. The staff at Hazelton's alleged malice and laziness in failing to protect a reasonably forseeable assault on Valerio is an example of negligence and do not involve consideration of public policy. Such an action do not reflect the kind of 'judgment' or 'choices' considered to be "grounded in social, economic, and political policy" that the discretionary function exception shields "from 'judicial' second guessing." Gaubert 499 at 323. Those decisions are 'execution of sentence', 'prison condition' issues that are always challengable to hold authorities accountable. See 28 U.S.C.S. §2241. Notwithstanding the District Court's suggestion to the contrary, the Case Manager, SIS Officers, Correctional Officers at the Unit, Psychological Staff at intake, their status as the officers of the facility does not necessarily transform their ordinary day-to-day garden variety decisions into one of the BOP's 'policy decisions' either. Deference is only due when discretionary decisions such as those that involve professional qualities and truly reflect to incorporate a well reasoned basis. The challenged actions do not fall into that category.

The Government seeks to recast this case, focusing on the purported broad economic and political implications of the Bureau Of Prisons decision to classify, house, and place inmates, rather than the specific conduct of the staff at the facility that is alleged as negligence. That argument is way far off the base. When the attorneys for United States decided to prosecute Valerio for crimes against it and enforce the law, those issues were in consideration. When Valerio was convicted, and the attorneys for United States and Probation began their pitch to Sentencing Court to sentence him to be incarcerated, the Federal Government apportioned a sum certain per year to incarcerate Valerio into a facility that is commensurate with the safety, security, and programming needs all the while protecting his rights. Most recent estimate is §40,000/year. The broad 'economic, social, and political' aspects of public policy were already made. The BOP is only required to carry out those responsibilities with certitude. There is no other economical policy consideration decisions that needs to made.

Even other circuits have recognized non-policy based government acts that are unprotected by the Discretionary fucntion exceotion. "[T]orts stemming from garden variety decisions fall outside the discretionary function exception is consistent with a primary

motive behind the [Federal Tort Claims Act]." Cestonaro V. United States, 211 F.3d 749, 755 ) (3rd Cir 2000) (holding asserted negligence in failure to provide adequate lighting or warning in federally controlled parking lot not shielded by discretionary function exception). Since "the question" as to whether the discretionary function exception applies "is not whether there is any discretion at all, but whether the discretion is grounded in the policy of the regulatory regime," the proper analysis looks to "whether the decision is fraught with economic, political, or social judgments." Cope V. Scott 310 U.S. App. D.C. 144, 45 F.3d 445, 449-50. (D.C. Cir. 1995)(internal citations omitted)(holding that asserted failure to post adequate warning signs along commuter road not shielded by discretionary function exception); See also Boyd V. United States 881 F.2d 895, 898 (10th Cir. 1989)(holding that asserted failure to warn of danger in offshore swimming area "does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned"). The decisions of BOP Staff challenged here are no more "fraught with economic, political, or social judgments," Cope at 450 (citations omitted0, than were those at issue in Cestonaro, Cope, or Boyd.

The case at bar is not about a national security issue, but rather a mundane, administrative, garden-variety, housekeeping issue that is about as far removed from the policies applicable to BOP's mission to adhere to Attorney General's delegated power. See Gotha V. United States 36 V.I 392, 115 F.3d 176, 181 (3rd Cir 1997)(holding discretionary function exception is no shield to claim of negligence in failing to provide handrails or adequate lighting on footpath). These decisions are equally applicable in case at bar. The Gotha court found it "difficult to conceive of a case more likely to have been within the contemplation of Congress when it abrogated sovereign immunity" than the one before it. Id at 182. An appropriate application of the discretionary function exception leads to precisely the same conclusion in this case.

The discretionary function exception serves the important purpose of protecting the government from tort suits that challenge its policy-making authority. There is no doubt about that. So long as the policy does not violate an individual's constitutional right. But when the exception is used to shield the government from liability emanating from ordinary garden-variety negligence not 'grounded in' in public policy, or is product of malice in aforethought to inflict an injury of constitutional proportion, it subverts the very purpose of the Act. As the Supreme Court has recognized, certain decisions, even though made in connection with "official duties" and even though discretionary in nature, are not shielded by the discretionary function exception because "the decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." Gaubert 499 U.S. at 325 n.7. The acts challenged here hardly can be said to involve precisely such non-policy-grounded decisions. Can it be a "policy grounded decision" to inflict brutal assault with deadly weapons causing serious injury ? This appeal submits and pleads the answer to that question from this Court be an emphatic NO.

motive behind the Federal Tort Claims Act]." Ceston v. United States 211 F.3d 749, 755

## V. CONCLUSION

In Morozsan v. United States 849 F. Supp. 617 (7th Cir. 1994) Judge Sharp opined ||

It has been said often and variously that you can tell about a society by the way it treats those convicted of crime or those who are disadvantaged. Id at

More recently Brittany Griner, an WNBA player was convicted in a Russian Court on violation of Russian laws. Much of the bruhaha in American Media, Political Pundits, the Executive Office of President, the White House, Congressmen, and Senators issue was the prison conditions in Russia. There is a whole gamut of reporting on these issues and public was not only outraged but hoped speedy resolution to it. The President's office and White House is diligently working to bring home to player back into safety of this Country where laws are upheld and treatment of those convicted are humane under our constitution. If this Country is to honestly stand-up to such accusations and demand due process of law, humane treatment of individuals, we ourselves must first rid of such violations. Otherwise those accusations ring hollow.

Being tough on crime, following the constitution religiously to the dots in the i's and crossing the t's, reading the statute in earnest, and being strict textual interpretors, does not mean we incarcerate and forget their plight and right. hoping the nature will take its course. That will tell the alternate of what we stand in the World. We often believe in presumption that law-enforcement accounts of facts and events are truthful in nature, and their conduct lawful. That presumption is applicable to equally to the Correctional staff at BOP. It is the duty of Judiciary to uphold that and in the same instant abhorring the opposing unlawful conduct. Congress can neither exercise judicial power nor refuse to vest it in the Courts. Where the errors of constitutional proportion occur, the Courts of United States are bound to take notice. Otherwise, the judiciary is then shrinking into a mere instrument of Congress, as to perform subordinate duties as directed and imposed by Superior dominant power of the legislation. The very fact, the Supreme Court has advised against. If this Court fails to send a message to law-enforcement officials that they cannot hide under the 'loop-holes' of discretionary function to commit crimes against inmates, the injuries will continue to occur at the expense of lives. Valerio like numerous other pro se and experienced litigators is struggling to navigate this maze of 'discretionary function exception' using which BOP agents are commiting various crimes. He pleads, a proper interpretation is due which the lower Court has failed to afford him and a viabile remedy, under a wholly unreasonable application of law and facts.

He Respectfully Submits,

Date Executed : 10.17.22

Joseph Valerio ( #83257-053 ).

- 24 -

EXCERPTS

OF

RECORD

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH VALERIO,
(Plaintiff).

Case No : 5:20-CV-185.

Vs.

UNITED STATES OF AMERICA,

(Defendant).

OBJECTION TO SUMMARY JUDGMENT AFFIDAVITS

( Fed. R. Civ. Proc. 56(c)(2), (4) and 56(h) ).

( OBJECTION IN LIEU OF MOTION TO STRIKE ).

Plaintiff Joseph Valerio (Valerio) makes this formal, written objection to the affidavits of (1) GREGORY MIMS M.D. and (2) STEPHANIE MORRIS. Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that an 'objection' that the evidence presented cannot be presented in admissible form is the proper way to challenge the Summary Judgment evidennce. Since the 2010 amendment to Rule 56, there is, "no needto make a separate motion to strike" and the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated at the trial. Fed. R. Civ. Proc. 56, adivsory committee note of 2010.

### GROUNDS FOR OBJECTION

At the outset, both the affidavits fails to conform to the requirement of summary judgment affidavit and declaration that are not set out in Rule 56(c)(4) of the Federal Rules of Civil Procedure. The affidavits are not admissible and cannot be presented in the form that would be admissible as evidence at trial because :

1.    First, both the affidavits are not based on personal knowledge. The affidavit merely read out data from various sources who were part of diagnosis in case of Mims Declaration and the other were parties to investigation. Neither Dr. Mims was the primary physician who performed the diagnosis on Valerio nor was Morris who investigated the matter that is contended in the cause of action. Both the affiants are not in position to have first hand knowledge of any of the events that are contested in this action.

2.    Dr. Mims background is unclear. There is no information provided where he is licensed to practice or his expertise in assessing injuries from an assault. Mims declaration is merely summarizing data from various medical consultations. The actual practitioners who conducted those examinations are not the affiants here.

3.    Morris is not part of the team that conducted intake screening, nor she is part of the team that investigated the assault(s). She does not have any first hand knowledge of

the facts nor she has contributed anything substantial to the investigation that requires her testimony.

4.    Second, for the reasons explained above, the affidavits does not affirmatively show that the affiants are competent to testify as to particular facts in question.

5.    Third, for the reasons explained in paragraphs above, the affidavits does not set forth admissible evidence but is, at best, a hearsay report of what events occured, Valerio told the staff, diagnosis performed etc. See Fed. R. Evid 801(c), 802. These affidavits also lack test of relevance under 403 as made by the affiants. Nor the affidavits can be subjected to exception under hearsay rule. See 803. No explaination is

6.    No explaination is offered as to why the actual physicians who performed the procedures, or the actual physicians who performed corrective procedures at U.S.P. Tucson could not have offered in place of Dr. Mims.

7.    Similarly no explaination is offered with respect why the actual SIS officers, case managers, unit managers, psychology staff at intake, and the actual SIS investigative officers who performed the task of investigation could not have offered in place of Morris.

8.    Much of the testimony on which defendant relies will not be helpful to trier of the facts and thus does not warrant the Court's consideration on Summary Judgment.

9.    More significantly Plaintiff Valerio, makes a strenuous objection to repeated recitation of the nature of his conviction in order to bias the trier of fact against him. Valerio's conviction is not at the trial in this cause of action. Those repeated assaults on his conviction will result in nothing but prejudicing him under the eyes of trier of facts.

10.    Both the declarations fail to stand the test of credibility, rather they are made in bad faith as explained below.

### DECLARATION OF STEPHANIE MORRIS

11.    The gravamen of Morris's declaration is Valerio's failure to assess his situation. Morris squarely blames Valerio for his failure to provide reasons/issues that would preclude him from placing in general population at 2. Valerio does not have any burden to inform SIS, but SIS has burden to assess the issue. Morris is misrepresenting the facts and the relevant question is, is she qualified to be an SIS technician.

12.    If Morris alludes that Valerio should (a) investigate roster of inmates find his separatee(s); (b) assess character profile of the facility, (c) assess safety and security and good order of the facility and (d) find reasons to preclude his housing in general population, then she seem to suggest inmates must first complete SIS training. This is lack of experience and efforts to mislead the trier of facts.

13. Morris declaration refers to Attachment 'E' titled inmate investigation report HAZ-17-0721, conducted at 9 P.M. within minutes of assault by Lt. Howell E. The report concludes the investigation immediately that Valerio was unable to identify the inmates who assaulted him or provide any further information into his assault. This finding is not only misleading but genesis of conspiracy to conceal the crime. At this point, Lt. Howell's experience is unknown but if he is the lead investigator then his competency is in question.

14. It is unclear who made the final conclusion at ¶ of the investigation report, because there are no names listed, but officials seem to have had an epiphany that Valerio's safety is in jeopardy if he returns to general population at U.S.P. Hazelton, a finding that should have been made at the designation time.

15. This court must note, there is no attempt to find the assailants nor there is an attempt to discipline them for the greatest severity prohibited act 101. Which stands as evidence to allegation that there are efforts made to conceal the crime and misconducts. No referrals to prosecution were made. This investigation and the declaration reeks of foul-play and cover-up.

### DECLARATION OF GREGORY MIMS, M.D.

15. Dr. Mims is not Valerio's physician nor he treated Valerio. Mims Decl refers to Dr. Crouch's assessment dated 8/28/2017 at 9:55 A.M. Valerio arrived at the USP Hazelton facility around evening. His interview with SIS which is usually thefirst was conducted at 7:06 P.M. It is not possible for Dr. Crouch to interview Valerio in the Morning at 9:44 A.M. Dr. Crouch's declaration is evidence of medical fraud.

16. The next report generated a few minutes later at 10:10 A.M. titled "Intake Screening", Dr. Crouch records "no adjustment to incarceration concern" exists. Here Dr. Crouch makes a remarkable finding, that "Mr. Valerio appears to be adjusting adequately to the institutional environment" within few minutes of his arrival to a maximum security prison. She does not offer any basis for such a finding. Dr. Crouch after noting his conviction and instead of referring Valerio to appropriate treatment facilities, clears him for housing in general population. There is no offer to explain the rational basis for such recommendation. That is alleged as breach of standard of care.

17. In his Declaration, Dr. Mims then refers to three separate encounters at 5. See Para ¶20 on 9/6/2017 with Dr. Thomas DuVall, ¶21 on 10/4/2017 with Dr. Thomas DuVall, and ¶22 on 10/10/2017 with Dr. Trotter. V. This Court will find each of these report, word for word, character for character and punctuation by punctuation identical to each other even though they are dated differently. This is also evidenced as 'fraud' and 'misleading'.

18. When a diagnosis begins on a false premise, its prognosis will inevitably be false.

These declaration are in turn submitted as evidence of fraud, misrepresentation of fact and attempts to mislead the trier of facts.

CONCLUSION

19. As an initial matter, defendant has not offered any explanation as to the form of any of the testimony they anticipate they will elicit and how that testimony will be admissible. The proponents have likewise failed to offer any explaination, how these testimonies from any of these affiants will refute the numbered statement of facts in the complaint, would be exempted from the definition of hearsay or would fall under an exception to the rule against hearsay, or pass the test of relevance.

20. The above paragraphs demonstrate and Valerio submits, these declarations are made in bad faith, are in admissible, and are solely made to mislead the Court after a reasonable time to respond was offered. Despite making the allegations earlier, defendant(s) continue to make the same proposition in efforts to mislead this Court. Therefore, Valerio requests this Court to make apropriate finding and sanction appropriately.

Respectfully Submitted,

5.4.22

-----

Joseph Valerio ( #83257-053 ).
USP TUCSON, P.O.BOX NO : 24550.
TUCSON, AZ 85734.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH VALERIO,

**Plaintiff,**

v.                                        Civil Action No. 5:20-CV-185

UNITED STATES OF AMERICA,

(Defendant).

PLAINTIFF'S SUMMARY OF UNDISPUTED FACTS

Plaintiff Joseph Valerio, appears in pro se to summarize the undisputed facts, defendant have failed to contest and intelligently waived them.

1. Joseph Valerio (Valerio henceforth) is a federal prisoner. His inmate number is 83257-053.

2. Valerio's reasonable security, protection and care is responsibility of Federal Bureau of Prisons (BOP henceforth), throughout his incarceration.

3. There are only three maximum security penitentiaries under BOP that can accomodate inmates with Valerio's nature of conviction. They are (a) U.S.P. Tucson, located in Tucson, AZ. (b) U.S.P. Terra Haute, located in Terra Haute IN. and (C) U.S.P. Coleman II., located in Coleman, FL.

4. The three facilities listed in Para. 3, are the only facilities commensurate with security and programming needs of Valerio.

5. U.S.P. Hazelton, in WV is an active-yard facility, where inmates with Valerio's nature of conviction cannot walk the yard, program or be housed in general population

6. U.S.P. Hazelton is not commensurate with safety, security and program needs of Valerio.

7. For decades now, historical data shows that no inmates with Valerio's nature of conviction has walked the U.S.P. Hazelton facility or programmed in general population.

8. For decades now, historical data will show, that every inmate with Valerio's nature of conviction was assaulted after being classified and assigned to general population in U.S.P. Hazelton due to nature of the conviction.

9. For decades now, historical data will show that every inmate with Valerio's nature of conviction has been eventually transferred to facilities listed in para. 3.

- 1 -

10. DSCC Staff at Grand Prairie, Tx knew or should have known the facts listed in Para. 1 through 9.

11. DSCC Staff at Grand Prairie, Tx had a duty to classify and designate him to a facility that is commensurate with Security and programming needs through a consistent system of classification and designation.

12. DSCC staff at Grand Prairie, Tx were grossly negligent and knowingly or under should have known mens rea, classified and designated Valerio to U.S.P. Hazelton.

13. Case Management Coordinator (CMC) at U.S.P. Hazelton, knew or should have known the facts listed in Para. 1 through 9.

14. CMC at U.S.P. Hazelton was grossly negligent and knowingly or under should have known mens rea, failed to dispute and correct Valerio's designation at U.S.P. Hazelton.

15. Historically, U.S.P. Hazelton is riddled with complaints and grievances involving incidents of assault on inmates who's nature of conviction is same as Valerio.

16. On the 28th day of August in the year 2017, each and every prison staff at the intake screening of U.S.P. Hazelton :

    (a) Knew or should have known of the facts in Para. ¶1 through ¶9 , and ¶15.

    (b) Failed to advise Valerio of the infirmity that he cannot program in general population due to the nature of his conviction. If he did choose to, he would be assaulted, possibly with deadly weapons.

    (c) In what can be called nothing less than sadistic in nature, they conspired to protect themselves by improperly advising Valerio to sign a consent form to house him in General Population.

    (d) Consented to designated Valerio to a General Population housing unit.

17. On the 28th day of August in the year 2017, one or more staff at the intake screening of U.S.P. Hazelton facility surreptitiously disclosed the nature of Valerio's conviction to the inmates at this unit, so that they can assault him with impunity.

18. All of the staff at the intake screening at U.S.P. Hazelton and staff at Valerio's housing unit knew or should have known Valerio's assault was imminent.

19. On 29th day of August in the year 2017, numerous inmates banded together, using deadly weapons assaulted Valerio for the reasons mainly, nature of his conviction.

20. Valerio remained unconscious during the time. It took two hours to reach the nearby J.W. Ruby Memorial Hospital's emergency department.

21. All the staff at the medical center noted, that he was assaulted due to the nature of his conviction.

22. After admitting Valerio into ICU, Medical Reports indicate, he Sustained (a) Subdural Hematoma (SDH), (b) Depressed Skull fracture, (c) Temporal Bone Fracture, (d) Scalp Lacerations, (e) Zygomatic arch fractures, (f) Multiple fractures of the Mandible and (g) Nasal Fractures.

23.  The Medical Staff at WV U. Medicine failed to evaluate Valerio's loss of hearing, breaching the standard of care.

24.  Special Investigative Services (SIS) began the cursory investigation to ensure the matter does not escalate any further and to protect the staff misconduct involved in incident.

25.  The surveillance tapes covering every inch of the facility and assault were deliberately spoiled.

26.  The assailants who were known to SIS were not disciplined for the fear of discovering staff involvement and revealing the reasons for assault which would then create strict liability for the facility.

27.  The SIS investigation into the incident was closed with a determination that the facility was not safe for Valerio and recommended his transfer.

28.  The Psychology Staff began manufacturing fraudulent medical and screening records after the fact to shield their negligence.

29.  The Medical procedure Valerio underwent at WV U. Medical Hospital began showing signs of deterioration and causing unwarranted effects of severe pain, drooling, speech impediment and hearing loss.

30.  After numerous complaints, during ENT examination the medical professionals uncovered that Valerio indeed has suffered loss of hearing. The causal connection to this must be attributed to blood clot in the ear canal due to skull compression and failure to isolate and quickly treat it. The blood clot glows in any of the scans.

31.  It was once again 'negligence' that paved the way for Valerio's second assault. The reason for this assault was once again nature of his conviction.

32.  The psychology staff continued to manufacture fraudulent medical records with impunity while Valerio was housed in SHU.

33.  After his transfer to U.S.P. Tucson, the medical staff discovered that the ORIF procedure Valerio underwent was defective and performed corrective procedure to allay his pain, speech impediment, oral functions, and drooling issues.

34.  Valerio's body suffers from imbalance and he cannot walk without the aid of his cane.

35.  After arriving at U.S.P. Tucson, as of this day no one has assaulted him for the reasons of nature of his conviction.

36.  Valerio has successfully enrolled in programs to rehabilitate and the facility is commensurate with the needs of his programming.

37.  Valerio is still awaiting for hearing aids and dentures to assist him.

38.  From August 29th 2017 through his transfer to USP Tucson, Valerio has and continue to suffer intentionally inflicted emotional injuries.

- 3 -

Respectfully Submitted,

By: _____

JOSEPH VALERIO ( #83257-053 ).
USP TUCSON, P.O.BOX NO : 24550.
TUCSON, AZ 85734.


## CERTIFICATE OF SERVICE

I the undersigned, hereby Certify that on, 20th day of May, 2022, a copy of the foregoing motion was placed in the hands of prison officials under the prison mailbox rule for delivery to the Clerk of Court via U.S.P.S. Certified Mail with Tracking :


A true copy was also mailed to the following Address :

United States Attorney's Office. Attn: Maximillian F. Nogay.
P.O.Box 591, 1125 Chapline Street, Suite 3000.
Wheeling, WV 26003.

Additionally when the Clerk of the Court dockets the motion, all the interested parties will be served via notification from the CM/ECF system satisfying requirements of service.

By: _____

-----

Joseph Valerio ( #83257-053 ).
USP Tucson, P.O.Box No: 24550.
Tucson, AZ 85734.

STATEMENT OF FACTS FOR FAILURE OF SIS AND THE INSTIT?UTE CORRECTIONAL STAFF
TO PROTECT VALERIO.

19. Somehow Valerio's conviction was leaked from the intake screening process to the inmates at his unit in General Population. Because by then, his records, PSI and any relating to his underlying conviction were not on the law-library Lexis-Nexis computer, which is how usually inmates unearth convictions from.

20. In the alternative SIS and the institute failed to properly monitor any attempts made by inmates via telephone to access Valerio's underlying conviction. Because these are the only two avenues inmates have, to access someone elses conviction.

21. Overall, the lapse in protecting Valerio resulted in a brutal assault on August 29th 2017, by and use of deadly weapon to wit: lock-in-socks by five inmates, shod feet, fists, etc., causing serious bodily injury as accounted in the Section VII of the injuries.

22. Despite being aware of all the injuries sustained by Valerio, the institute, specifically the SIS, Unit STaff, and Correctional staff failed to find and prosecute the attackers giving them free pass to assault further. That constitutes DELIBERATE failure to investigate the assault. KNOWINGLY and being NEGLIGENT and RECKLESS. The surveillance Camera[s] in the Unit do not need further corroboration in identifying [the] perpetrators.

24. The failure resulted in a second assault on Valerio, resulting in further complicating his injury and psych, he earleir suffered due to August 29th, 2017 assault.

STATEMENT OF FACTS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CLAIM 5).

1.    At all times pertinent, Joseph Valerio (Valerio) was and still is a prisoner, an adult in custody of Bureau of Prisons (BOP)

2.    BOP is an agency within the meaning of United States and is liable to be sued under Federal Tort Claims Act. BOP is also agency, under United States liable for the injuries, property loss and or other damages sustained by inmates under it's care throughout their incarceration. See 18 U.S.C.S. §4042(a)(2) and (3).

3.    Valerio's safety, security, protection and care is responsibility of BOP throughout his incarceration.

4.    For any or all injuries suffered by Valerio, BOP is the provider of medical care, Valerio has no other option to seek alternative care or otherwise.

19.    Somehow Valerio's conviction was leaked from the intake screening process to the inmates at his unit in general population. Because by then, his records relating to his underlying conviction were not on the law-library Lexis-Nexis computer, which is how usually inmates unearth convictions from.

20.    In the alternate SIS and the institute failed to properly monitor any attempts made by inmates via telephone to access Valerio's underlying conviction. Because these are the only two avenues inmates have, to access someone elses conviction.

21.    Overall, the lapse in protecting Valerio resulted in a brutal assault on August 29th 2017, by and use of deadly weapons to wit: lock-in-socks by five inmates, shod feet, fists etc. causing serious bodily injury as accounted in the section VII of the injuries.

22.    Despite being aware of all the injuries sustained by Valerio, the institute, specially the SIS, Unit Staff, and Correctional Staff failed to find and prosecute the attackers giving them free pass to assault further. That consitutes deliberate failure to investigate the assault. KNOWINGLY, being NEGLIGENT and RECKLESS. The surveillance camera's in the unit do not need further corroborations [in] identifying [the] perpetrators.

23.    Inspite of all the ordeal Valerio suffered, the SIS, Unit Team, and SHU staff failed to house Valerio in a single or isolated cell in SHU. They housed him in with another active inmate, KNOWING, NEGLIGENT, and in RECKLESS manner that he would be further assaulted by the inmate.

24.    The failure resulted in a second assault on Valerio, resulting in further complicating his injury and psych[e], he earlier suffered due to August 29th, 2017 assault.

26.    After Valerio was brutally assaulted with locks-in-the socks, and shanks by five inmates, it took the BOP officials two hours to reach the nearby medical center. There is no explaination for the wastage of those two precious hours.

27.    After the evaluation of the injuries suffered, the medical staff at WVUMedicine performed hasty surgeries and operations on the facial fractures.

28.    At no point in time, Valerio was offered psychological assistance for the trauma he suffered due to the brutal attack. Infact there [was] no psychological assistance throughout this ordeal.

29    The medical staff at WVUMedicine failed to evaluate the loss of Valerio's hearing. The oral surgery performed fell below the applicable standards expected [of] medical standards.

30.   As a result of that faulty oral procedure, Valerio had to go through re-fixing his facial and jaw fractures once again at USP Tucson. The pain and suffering caused due to that is wanton and the mental anguish is beyond what is necessary.

31.   The psychological effect of these [are] not assessed [even] as of today, complicating the medical negligence. It is already hard to record the injuries sustained post a traumatic and stressful assault. The complications compounded when not assessed timely. The lack thereoff to assess the injury is negligent and reckless by the psychological staff. Valerio is [ill]-equipped to assess the injuries on his own beyond, stating he feels deathly everyday.

32.   After the second attack at FCI Hazelton, the medical staff at BOP foolhardily ignored his injuries stating they did not see any broken bones or loss of blood. And then returned him back to Unit. Valerio was already bandaged thoroughly by that point. The wheelchair was slammed on his back and his ribs repeatedly. For the medical staff at FCI Hazelton to say, they don't see any injuries would be reckless, negligent and inhumane.

33.   The repeated fisting on his face resulted in unknown or at least unassessable injuries to his already fractured mandibles.

34.   Despite the second assault, Valerio was never provided the necessary mental care.

49.   The actions of defendants, jointly and severally, were extreme and outrageous and were performed with the intention of causing severe emotional distress  to Valerio or with gross negligence or with reckless disregard of the consequences.

[5]0.        Their actions clearly exposed Valerio to hatred, contempt, ridicule, and obliquy, because it depicted Valerio as this monster, who behaved in a heinous and criminal manner; the worst of worst offenders to whom no-on[e] should afford the dignity of being a fellow human; the scum of the humanity.

[5]1. That conduct was so outrageous in character and so extreme in degree as to go beyond and all possible bounds of decency and is to be regarded as atrocious. Defendant's perversion to cause violence and injury to Valerio due to his underlying conviction is utterly intolerable in a civilized community or has place in judicial system of comity.

[5]2. The fact that the conduct alleged is of law-enforcement-officers and the staff to whom an individual inmate is attested the custody to protect as a ward under care, are engagin in such cruel act is demeaning to the sense of humanity and lawfulness.

[5]3. As a direct and proximate cause of the wrongful acts of the defendants, Valerio has suffered extreme indignities and humiliations, severe emotional distress, mental anguish, loss of self-respect, loss of confidence, loss of liberty within the prison system, and has been constantly held upto ridicule amongst his peers.

[5]4. Valerio's suffering of emotional anguish and or mental harm is of sufficient severity to be medically significant and yet the injury is not treated for.

CERTIFICATE OF SERVICE

On the 17th day of October        2022   , I the undersigned deposited the foregoing motion(s), affixed with adequate postage prepaid, in the institutes prison mailbox for it to be delivered to the Clerk of Court.

[ x] Certified with tracking # :     7020 2450 0000 6741 7573

[x ] A true and correct copy was also mailed to the following address :

> ⇔83257-053⇔
> Us Attorneys Office
> Attn: Maxmillian F Nogey
> 1125 Chapline ST
> P.O.Box 591
> Wheeling, WV 26003
> United States

Alternatively, when the Clerk dockets the motion(s), all the interested parties who are users of CM/ECF system in this cause of action will be notified by the CM/ECF notification system, satisfying the requirement of service.

I SWEAR, AFFIRM and CERTIFY that the foregoing is true and correct to the best of my knowledge and is provided under the penalty of perjury pursuant to the laws of United States ( See 28 U.S.C. § 1746 ).

JOSEPH VALERIO            (Inmate #83257-053         ).

USP TUCSON, P.O.BOX NO: 24550.

TUCSON, AZ 85734.

RECEIVED

2022 OCT 21  PM 2: 25

U.S. ...
FOURTH CIRCUIT

83257-053
Valerio M Joseph
24550 PO BOX NO.
Inmate #83257-053
Tucson, AZ 85734
United States

CERTIFIED MA

7020 2450 0000 67

[ LEGAL MAIL ]



RECEIVED
U.S. MARSHALS

⇔83257-053⇔
Clerk Of Court
U.S. Court OF Appeals
1100 E MAIN ST
Fifth Floor
Richmond, VA 23219
United States